THOMAS, Justice.
The facts relevant to this controversy are undisputed.
An information was filed by the State Attorney of the Fifth Judicial Circuit in which one David Richardson was charged with conducting the game of bolita, a lottery, and with assisting in the operation of a lottery known as Cuba. The information was filed 6 August 1953.
Meanwhile, 9 June 1953, Richardson had furnished a bond, signed by the appellants as sureties, containing the condition that he would “appear before the Next Regular or Special Term of Circuit Court to be held in and for said county [Marion], 1953, at-A.M. to answer to the charge of Aiding and Assisting in Operation of Lottery and appear from day -to day and term to term thereafter, * * * and not * * * depart without leave * *
On 18 September 1953, when the docket was being sounded and trials set for the impending term, the state moved that the bond be estreated and the judge, in an order reciting that the defendant and bondsmen had been called and had failed to answer, set 25 September 1953, as the day when he would hear any reasons why the bond should not be estreated. Evidently no formal hearing was held upon the day set and adjudication of liability on the bond was deferred. The next reference to the matter appears in the minutes of the first day of the fall term of the court when it was noted that the court ordered the bond estreated and a capias issued for the arrest of the defendant.
On 16 October 1953, the defendant pleaded not guilty. The following month he was tried, found guilty and sentenced to three years in the state penitentiary. The day he entered his plea the judge certified the estreature of the bond for failure of the defendant to appear, and the sureties to produce him, “at the term of this Court.”
Later the bondsmen petitioned the court to set aside the estreature order asserting that they had aided the sheriff in locating and apprehending the defendant who, in fact, had been produced at the then term of court, and offering to reimburse the state for any expense that had been undergone in apprehending the principal. In a hearing on this motion the judge considered the facts, heard argument of counsel and declined to set aside his order.
It may be that the proceeding in September was premature, but any error committed then became inconsequential because it is clear that the eventual estreature was based on events occurring after the regular term of court began.
From this background it seems that the only question for decision is the propriety of the judge’s order of estreature when the defendant did not appear on the first day of the term in view of the absence from the bond of the designation of a specific day on which the defendant was obligated to appear and in the presence of the representation of the sureties that they had done everything within their power to produce the defendant, or to help the sheriff to do that.
From our study of the record, we concur with the judge in his statement that the sureties were chargeable with no bad faith but on the contrary conducted themselves conscientiously in trying to get the defendant into court to answer the charges against him. But the undertaking in the bond was not directly dependent on their good conduct, it was a promise to pay the state a *694 given amount if the defendant did hot ful-fil the obligation of the bond. And he did not. The- appellants knew when they executed the bond, to secure the freedom of the defendant until court convened, that in exchange for the privilege granted him, they would pay if he overstayed his time of actual liberty. Of course, he was under constructive restraint all the while because he had been arrested for a crime for which he would be answerable once the court convened.
It is true that under the statute, Section 903.27, Florida Statutes 1953 and F.S.A., the opportunity is given satisfactorily to explain the breach of the obligation and the judge may, if satisfied, direct the forfeiture to be discharged. The discretion of the judge to set aside the forfeiture does not seem to have been abused. The fault of the principal was not explained; he simply came in ten days late. The explanation offered by the bondsmen dealt only with their efforts to get the principal back in custody. They were obviously disturbed about the failure of the defendant to appear and, as obviously, eager to produce him in order to be relieved of the liability. It was not the purpose of the statute to excuse bondsmen simply because of their conscientious attempts to get their principal before the court, but to provide a means to relieve against the obligation of the bond when the principal was prevented from appearing by circumstances beyond his control.
The good faith of the sureties cannot offset the shortcomings of the principal. So far as he was concerned he offered no valid excuse for the default. If such a doctrine were ever recognized and established, the whole system would come to naught. An indictee could flee the charge and the state could recover nothing if the sureties but showed good intentions.
As for the uncertainty of the return day in the bond, we agree with the trial judge that if a defendant is bound to appear at a given term, he should appear on the first day and remain from day to day thereafter. If defendants released on bail could come in at any time during the term at their own convenience, plainly the work of the court would be disrupted. Dates for trials during the term must be fixed in an orderly manner not only for the purpose of dispatching the cases but for the benefit of defendants, and the accommodation of jurors and witnesses, not to mention the economy of time and money.
We conclude that the judgment should
Affirmed.
MATHEWS, C. J., and HOBSON and DREW, JJ., concur.