RAWLS, Judge.
United Bonding Insurance Company and its limited surety agents have appealed from two orders: 1. Denying the agents’ motion to set aside bond forfeiture and to direct remission, and 2. Denying the agents’ motion to set aside judgment and to direct remission, and denying motion for substitution of United Bonding in place of the movants.
Mrs. Janet Babson was convicted of murder in the second degree. Pending her appeal supersedeas bond in the amount of $18,000 was posted by her and United Bonding Insurance Company, as surety, through its limited surety agents, Paul Fi-carrotta and John M. Napoli. Mrs. Bab-son’s unsuccessful appeal terminated by the Florida Supreme Court’s denial of her petition for writ of certiorari. When Mrs. Babson failed to appear on the date ordered, the trial court entered an order of forfeiture on May 16, 1969. The $18,000 was paid to the Clerk of the Circuit Court on June 13, 1969, within the thirty days allowed by statute. On June 16, 1969, Mrs. Babson was arrested in Ohio, and on that same day the Clerk of the Circuit Court erroneously entered judgment on the bond under F.S. § 903.27, F.S.A. On June 17, 1969, the Clerk entered satisfaction of judgment on the estreated bond.
On July 3, 1969, a motion to set aside judgment and to direct remission of forfeiture was filed by a Tampa attorney, styled “State of Florida, plaintiff vs. United Bonding Insurance Company and Janet Loretta Babson, defendants.” The opening paragraph stated, “Come now PAUL FI-CARROTTA and JOHN M.' NAPOLI, agents for United Bonding Insurance Company.” At the hearing held on the motion, movants were represented by Jacksonville counsel who contended that the Tampa attorney who drafted the motion intended same as being brought by the bonding company through its agents. The trial court disagreed but heard the testimony of the witnesses which reflected that one of the agents paid half of the forfeiture and the company paid the other half; the other agent had exerted considerable effort and expense in attempting to have Mrs. Babson in court pursuant to the order of surrender ; and the subsequent arrest of Mrs. Babson may have been due to information supplied by the bondsmen to law enforcement agencies. The evidence further showed that the trial court was kept informed of contacts made with defendant, and the bondsman had asked for an extension of time for producing the defendant. At the conclusion of the hearing, the trial judge stated:
“I have grave doubt about the sufficiency of your motions made as they are by Mr. Ficarrotta and Mr. Napoli. * * * I would not accept an authorization from Mr. Ficarrotta as an authorization from United without checking carefully with United, but it may be that you’d want to file some new or additional motions. * * * [A]s it stands now, what your are presenting to me is something on which you’d need some law on whether the good faith efforts of a surety to produce a defendant, being unproductive, are sufficient to justify setting aside the forfeiture. When you get to the nitty-gritty and past the technicali *142 ties, it looks like that’s what you need to proceed * * * ”
The colloquy between court and counsel for the movants continued with a discussion of the proper procedures to be used in pursuing these proceedings, and whether it would be proper to file a petition and have a complaint-and-answer type approach. Near the conclusion the court stated that it did not know the proper procedure to follow, and “When you get where you want me to make a decision, bring me whatever law and facts you’ve got.”
Before movants took any further action, the court, on September 18, 1969, entered an order denying the motion and finding that the agents had no status to make the motion, that United Bonding had not filed a motion, and even if it had, there was no reasonable, good or sufficient cause shown to grant the motion.
Thereafter the movants filed (1) a motion to vacate the above order alleging that the transcript of hearing had been obtained only 22 days prior to the court’s order and said transcript had been sent by the Jacksonville attorney to the Tampa attorney for review and discussion with the mov-ants, (2) a motion for substitution of parties, and (3) a motion for rehearing. These motions were denied.
It is conceded that neither the bondsmen nor the surety apprehended Mrs. Babson, nor do other circumstances exist which place upon the trial court a mandatory duty to direct remission. Any remission to which the appellants may be entitled is dependent upon that portion of F.S. § 903.28, F.S.A., which reads:
“After the payment of the forfeiture the court before which the case is pending may, for reasonable cause shown, within one (1) year of the date of forfeiture, direct a remission of forfeiture in whole or in part upon such terms as are just * * * f>
Other portions of the statute impose a mandatory duty to order remission when the bondsmen or surety apprehend the defendant within one year after forfeiture, and in certain other cases where failure to appear was beyond the control of the principal or the surety, except where failure to sooner apprehend defendant has defeated the ends of justice. The legislature must have inserted the above quoted discretionary portion of the statute to cover lesser situations. The appellants here contend that since the trial court requested further evidence and suggested joinder of the surety company, they should be allowed to do both, and if they are able to prove that the bondsmen have diligently attempted to timely produce the defendant and have supplied law enforcement officials with pertinent information which materially led to the arrest of the defendant, such proof is a showing of “reasonable cause” to invoke the court’s discretion for consideration of remission in whole or in part. We agree.
Appellee takes the position that Crompton v. State[1] has settled the issue involved. There the Supreme Court in construing F. S. § 903.27, F.S.A., in 1955 held that under the statute as it existed at that time the trial judge correctly refused to set aside the estreature order because a showing that the surety had made a diligent attempt to locate defendant or to help the sheriff do so was insufficient grounds. The Supreme Court’s opinion noted that the fault of the principal was not explained. At that time F.S. § 903.27, F.S.A., (1953) provided that the court may discharge the forfeiture if “the breach of the undertaking is satisfactorily explained and the defendant shall in all other respects have complied with the condition of the undertaking.” The Supreme Court stated that the purpose of that statute was to provide a means to relieve against the obligations of the bond when the principal was prevented from appearing by circumstances beyond his control. The statute which was construed in that case is similar to the present subsec *143 tion, F.S. § 903.26(6), F.S.A., (1969) and involves discharge of the entire forfeiture although the surety may be required to pay costs and expenses.
Unlike the statute involved in the Crompton case, F.S. § 903.28, F.S.A., (1969) comes into play after payment of the forfeiture. The first phrase, which was quoted above, authorizes remission in the discretion of the court upon a showing of “reasonable cause”; that is, something less than the circumstances under which the court is required by the mandatory provisions of the law to grant a full remission or to discharge the forfeiture.
We find that the Crompton case is not controlling in the instant case. Under F.S. § 903.27, F.S.A., the Clerk was authorized to enter judgment only if the forfeiture was not paid so the Clerk’s judgment is void; the bondsmen, having shown a financial interest in the forfeiture, are proper parties; and United Bonding is an indispensable party.
Reversed and remanded for further proceedings not inconsistent with this opinion.
JOHNSON, C. J., and SPECTOR, J., concur.

. Crompton v. State, 78 So.2d 692, 693 (Fla.1955).